JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| AMERICAN VEHICULAR SCIENCES LLC,<br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR COMPANY, et al.,<br><br>Defendants. | Case Nos.: SACV 15-01389-CJC(JCGx)<br>SACV 15-01390-CJC(JCGx)<br>SACV 15-01391-CJC(JCGx)<br>SACV 15-01392-CJC(JCGx)<br><br><br>ORDER GRANTING MOTIONS TO TRANSFER |
| AMERICAN VEHICULAR SCIENCES LLC,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN MOTOR CO. LTD., et al.,<br><br>Defendants. |  |

AMERICAN VEHICULAR SCIENCES LLC,

              Plaintiff,

      v.

TOYOTA MOTOR CORPORATION, et al.,

           Defendants.

_____

AMERICAN VEHICULAR SCIENCES LLC,

              Plaintiff,

      v.

AMERICAN HONDA MOTOR CO. INC., et al.,

           Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## I.  INTRODUCTION

These four related actions were filed by Plaintiff American Vehicular Services, Inc. ("AVS") against a total of 21 defendants, who are vehicle manufacturers and airbag suppliers.  All four cases allege infringement of United States Patent No. 9,043,093 ("the '093 Patent").  Currently before the Court are four motions—one for each case—to transfer venue to the Eastern District of Michigan.  (*See* SACV 15-01389 Dkt. 70; SACV

15-01390 Dkt. 56; SACV 15-01391 Dkt. 56); SACV 15-01392 Dkt. 68.)[1]  For the

following reasons, those motions are GRANTED.[2]

## II.  BACKGROUND

Plaintiff AVS, "a  subsidiary of patent-licensing and -enforcing company Acacia Research, Inc.," *In re Toyota Motor Corporation*, 747 F.3d 1338, 1339 (Fed. Cir. 2014), is a Texas corporation.  AVS owns the '093 Patent, entitled "Single Side-Curtain Airbag for Vehicles," which was initially issued to a Mr. David S. Breed.  (SACV 15-01389 Dkt. 10 ¶ 19.)

In September 2015, AVS filed four patent infringement actions based on the '093 Patent.  The first, SACV 15-01389 ("the 1389 Case"), was initially filed against Hyundai Motor Company, Hyundai Motor America, Kia Motors Corporation, and Kia Motors America, Inc.  (*See* 1389 Case Dkt. 1.)  A subsequent First Amended Complaint added the following defendants:

- Autoliv, Inc.;
- Autoliv ASP, Inc.;
- Key Safety Systems, Inc.;
- Hyundai Mobis Co., Ltd.;

---

[1]  Due to technical difficulties, AVS evidently had trouble filing its oppositions to the transfer motions on the Court's electronic docket.  It ultimately filed the papers one day late and was forced to file applications for ex parte relief for the Court to consider the late-filed oppositions.  The Court is satisfied that the delay was not AVS's fault and that Defendants were not prejudiced.  The ex parte applications, (1389 Case Dkt. 87; 1390 Case Dkt. 90; 1391 Case Dkt. 67; 1392 Case Dkt. 86) are GRANTED, and the oppositions are deemed timely filed.

[2]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for May 2, 2016 at 1:30 p.m. is hereby vacated and off calendar.

1  • Mobis Alabama LLC; and

2  • Mobis Parts America LLC.

3

4  (1389 Case Dkt. 10.)  The second case, SACV 15-01390 ("the 1390 Case"), was

5  originally filed against Nissan Motor Co., Ltd. and Nissan North America, Inc.  (*See*

6  1390 Case Dkt. 1.)  An amended complaint added as defendants:

7

8  • Autoliv, Inc.;

9  • Autoliv ASP, Inc.;

10  • Nihon Plast Co., Ltd.;

11  • Neaton Auto Products Manufacturing Inc.;

12  • Takata Corporation; and

13  • TK Holdings Inc.

14

15  (1390 Case Dkt. 12.)  The third case, SACV 15-01391 ("the 1391 Case"), was filed

16  against Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc., (1391 Case Dkt.

17  1), and AVS subsequently added the following as defendants:

18

19  • Autoliv, Inc.;

20  • Autoliv ASP, Inc.;

21  • Takata Corporation;

22  • TK Holdings Inc.;

23  • Toyoda Gosei Co., Ltd.; and

24  • Toyoda Gosei North America Corp.

25

26  (1391 Case Dkt. 12.)  In similar fashion, the fourth case, SACV 15-01392 ("the 1392

27  Case") initially named American Honda Motor Co. as a defendant, (1392 Case Dkt. 1),

28

and then used an amended complaint to add the following parties as additional defendants:

- Autoliv, Inc.;
- Autoliv ASP, Inc.;
- Nihon Plast Co., Ltd.;
- Neaton Auto Products Manufacturing Inc.;
- Takata Corporation;
- TK Holdings Inc.;
- Toyoda Gosei Co., Ltd; and
- Toyoda Gosei North America Corp.

(1392 Case Dkt. 12.)

There are therefore 21 separate defendants defending these four actions, although several of the defendants appear multiple times. (Autoliv, Inc. and Autoliv ASP, Inc., for example, are named in all four lawsuits, and Takata Corporation and TK Holdings Inc. are both named three times. Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp, Nihon Plast Co., Ltd., and Neaton Auto Products Manufacturing Inc. are all named twice.) Defendants usefully place themselves in two buckets: the "Vehicle Defendants," which includes the Hyundai and Kia entities in the 1389 Case, the Nissan entities in the 1390 Case, the Toyota entities in the 1391 Case, and American Honda Motor Co. in the 1392 Case, and the "Airbag Defendants," which includes everyone else.

The amended complaints in each of the actions allege that the Airbag Defendants design, manufacture, assemble, test, and sell airbag systems which infringe the '093 Patent. (*See*, *e.g.*, 1389 Case Dkt. 12 ¶ 16.) The Vehicle Defendants are involved because the allegedly infringing airbag systems are installed in their vehicles. (*Id.* ¶ 16

("[i]nfringement . . . relates to the presence of side-curtain airbags in the [Vehicle Defendants'] automobiles."); *see also id.* ¶ 21 ("Hyundai's and Kia's infringement of the '093 Patent relates to the presence in its vehicles of side-curtain airbags within the scope of the claims of the '093 Patent.").)

Believing that these cases should be litigated in the Eastern District of Michigan, most of the Defendants filed motions to transfer in each of the four cases.[3]  (For efficiency's sake, they filed only one motion, and one reply brief, four times over.)  AVS opposed, objecting both to Defendants' treatment of the four cases as one case for the purposes of transfer, and arguing that transfer was inappropriate in any case.

## III.  LEGAL STANDARD

A district court has discretion to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Under § 1404(a), two findings are required for proper transfer: (1) the transferee district court is one where the action might have been brought, and (2) the convenience of the parties and witnesses and the interest of justice favor transfer.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  A court may consider multiple factors in determining whether the interests of justice favor transfer, including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the

---

[3]  The Hyundai, Kia, Nissan, Toyota, Autoliv, Takata, Toyoda Gosei, and Mobis entities joined in filing the motions for transfer.  (*See* 1389 Case Dkt. 70-1 at 3 n. 7.)  American Honda Motor Co. filed a notice of non-opposition.  (1392 Case Dkt. 85.)  Nihon Plast Co., Neaton Auto Products Manufacturing, Inc., and Key Safety Systems all moved to dismiss for lack of personal jurisdiction.  They have noted their belief that the materials in favor of their motions to dismiss also favor transfer and that they would join the motions to transfer if their motions to dismiss were to be denied.  (1389 Case Dkt. 70-1 at 3 n. 7.)

costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof," in addition to the relevant public policy of the forum state.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The moving party bears the burden of demonstrating that transfer is appropriate.  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).  District courts have broad discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration, *Jones*, 211 F.3d at 498, and must undertake a "flexible and individualized analysis" of relevant factors, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

## IV.  ANALYSIS

### A.  Whether the Case Could Have Been Brought in Michigan

As an initial matter, the parties do not dispute that each of these four actions might have been brought in the Eastern District of Michigan.  Defendants allege, and AVS does not contest, that that district would have personal jurisdiction over every defendant (because the Vehicle Defendants sell vehicles there, and because the Airbag Defendants sell airbags there).  (*See* 1389 Case Dkt. 70-1 at 14–15.)  And as AVSs' complaint arises under the patent laws, the Eastern District of Michigan plainly would have had subject-matter jurisdiction.  Accordingly, the first element of the transfer determination—that the action "might have been brought" in the transferee court—is met.  *See* 28 U.S.C. § 1404(a).

As to the second element—whether "the convenience of parties and witnesses" and the "interest[s] of justice" favor transfer—the parties initially disagree as to whether the Court may properly treat these four cases as one for the purposes of transfer.  Defendants point to the common ground between the cases: the same asserted patent, the same

inventor, the same claim construction, the same invalidity analysis, the same discovery from AVS, basically identical complaints, identical Rule 26(f) reports, and parallel schedules.  (*See* 1389 Case Dkt. 91 at 2.)  Additionally, Defendants argue, transfer of some cases, but not all, would "waste judicial resources and risk inconsistent judgments." (*Id.*)  AVS responds by arguing that the cases should be taken one by one, and that Defendants are trying to conflate the cases with one another to make it appear as if there are greater ties to Michigan than actually exist.  No party cites any law in favor of its approach.

Although the Court is persuaded that the cases' close connections merit treating them together for the purposes of transfer, and although transferring some but not all of the cases would clearly be inconvenient for the parties and the judicial system, the Court will begin by considering the cases in tandem and then consider whether the outcome would be different with an individual approach.

**B.  Whether the *Jones* Factors Favor Transfer**

**1.  Where the Relevant Agreements were Negotiated and Executed**

The first *Jones* factor invites the district court to consider "where the relevant agreements were negotiated and executed."  *Jones*, 211 F.3d at 498.  Here there are no relevant agreements between AVS and any of the defendants, so this factor does not bear on the transfer calculus.  *Seely v. Cumberland Packing Corp.*, No. 10-CV-02019, 2010 WL 5300923, at *4 (N.D. Cal. Dec. 20, 2010) ("There is no contract at issue in this action.  Thus, this factor is irrelevant to this analysis.")

//
//

### 2. The State that is Most Familiar with the Governing Law

The patent laws are uniform, and both "the Central District [of California] and the Eastern District of Michigan routinely handle patent cases." *Signal IP, Inc. v. Ford Motor Co.*, No. LA CV14-03106 JAK(JEMx), 2014 WL 4783537, at *2 (C.D. Cal. Sept. 25, 2014). This factor is therefore neutral.

### 3. The Plaintiff's Choice of Forum

Ordinarily, a plaintiff's choice of forum cuts strongly against transfer. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."); *see also Signal IP*, 2014 WL 4783537, at *3 ("There is a strong presumption in favor of [a p]laintiff's choice of forum.") However, "[w]here a plaintiff does not reside in the forum, the Court may afford plaintiff's choice considerably less weight." *Vu v. Ortho-McNeil Pharmaceutical, Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. Mar. 9, 2009). Additionally, indications of forum-shopping or the fact that "the chosen forum lacks a significant connection to the activities alleged in the complaint" can serve to rebut any presumption in favor of a plaintiff's choice of forum. *Signal IP*, 2014 WL 4783537, at *3.

AVS is a Texas limited liability company with its principal place of business in Plano, Texas. (1389 Case Dkt. 10 ¶ 1.) It does not, therefore, reside in this District. Additionally, Defendants levy allegations of forum-shopping. They point out that in 2012, AVS filed a patent infringement case against Toyota Motor Corp. and a few related entities in the Eastern District of Texas. The defendants in that case moved to transfer to the Eastern District of Michigan, but the district court denied their motion. The Federal Circuit reversed, holding that the district court's refusal to move the cases was a "clear

abuse of discretion" given the relevant connections to Michigan.  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).  Defendants also argue that in subsequent litigation, AVS has "fared poorly" in the Eastern District of Michigan, (*see* Dkt. 70-1 at 2), and that AVS is now trying to avoid both Michigan and Texas by initiating litigation in California.  Finally, Defendants say, the actual conduct at issue here—the design and manufacture of allegedly infringing airbag systems—has nothing to do with the Central District of California at all.

The Court is not in a position to say whether or not AVS is actually forum-shopping.  Nonetheless, Defendants are correct that AVS does not reside in this District, that it has pursued other similar patent litigation elsewhere, and that much of the core conduct at issue here occurs outside the Central District of California.  These considerations are sufficient to rebut any presumption in favor of AVS's choice of forum, and therefore this factor is neutral.

### 4.  The Respective Parties' Contacts with the Forum

"In patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity."  *Signal IP*, 2014 WL 4783537, at *3 (quoting *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d. 1256, 1260 (W.D. Wash. 2005)).  Everyone agrees that AVS does not have important contacts with either the Central District of California or the Eastern District of Michigan.  And Defendants argue that they have significantly more contacts with the Eastern District of Michigan, especially contacts that relate to the airbag systems that form the gravamen of this lawsuit.

//

//

//

### i.  The Autoliv Entities

Autoliv, Inc. is incorporated in Delaware and maintains its headquarters in Sweden.  (1389 Case Dkt. 70-8 ¶ 7.)  Autoliv ASP is incorporated in Indiana and maintains its North American headquarters in Auburn Hills, Michigan.  (*Id.* ¶ 6.)  Autoliv, Inc. is evidently only a "holding corporation" for other Autoliv entities, including Autoliv ASP, and it is not responsible for the design, testing, or manufacture of side-curtain airbags.  (*Id.* ¶ 8.)  Autoliv ASP *does* design and test side-curtain airbags, and it does so at its facility in Michigan.  (*Id.* ¶ 10.)  There, it has 43 employees whose job responsibilities concern side-curtain airbags.  (*Id.* ¶ 13.)  Autoliv ASP also maintains a facility in Ogden, Utah which does relevant work on airbags.  (*Id.* ¶ 18.)  An Autoliv ASP employee avers that a "substantial amount of Autoliv ASP's development, design, prototype production, sale, marketing, and distribution of its side-curtain airbags occurs" in Michigan, (*id.* ¶ 17), and although Autoliv ASP does have a California facility, that facility's work does not relate to airbags, (*id.* ¶ 21 ("[T]here are no Autoliv ASP offices or employees located in the State of California that have anything to do with the accused side-cushion airbags.")).  As Autoliv ASP has significant contacts with Michigan, and *no* relevant contacts with California, its status as a defendant in this lawsuit weighs in favor of transfer.

### ii.  Key Safety Systems

Key Safety Systems is a Delaware corporation that maintains its "Worldwide Headquarters and USA Technical Center" in Sterling Heights, Michigan.  (1389 Case Dkt. 45 ¶ 2.)  Several of its employees were "materially involved in the research, engineering and design" of airbags used in the accused vehicles, and *all* of those employees are located in southeastern Michigan.  (*Id.* ¶ 6.)  Key Safety Systems does not manufacture, design, test, engineer, or develop airbags in California, it has no relevant

employees in California, and it maintains no relevant records in California.  (*Id.* ¶¶ 11–13.)  Its single California office performs work unrelated to airbags.  (*Id.* ¶ 15.)  Key Safety Systems' extensive contacts with Michigan and its absence of relevant contacts with California weigh in favor of transfer.

### iii.  Nihon Plast Co., Ltd.

Nihon's headquarters and technical center, as well as its primary manufacturing facility, are located in Fujinomiya City, Japan.  (1390 Case Dkt. 40-1 ¶ 4.)  It manufactures airbag systems in Japan and then delivers them to auto manufacturers in Japan.  (*Id.* ¶ 6.)  It does not manufacture airbags in the United States.  (*Id.* ¶ 7.)  Although Nihon employees are occasionally required to travel to the United States, a "large majority" of their trips are to Neaton's facility in Ohio.  (*Id.* ¶¶ 9–11 (describing 66 trips total, 60 of which were to Ohio).)  No Nihon employees traveled to California during 2015, and Nihon's president declares that Nihon employees "rarely, if ever, traveled to California for Nihon business prior to 2015."  (*Id.* ¶ 12.)  Nihon's total absence of contacts with California, and its employees' occasional trips to Ohio, weigh only slightly in favor of transfer, since Nihon employees *may* be able to combine trips to Ohio with trips to Michigan.  *See Orbital Australia Pty Ltd v. Daimler AG*, No. 3:14CV808, 2015 WL 4042178, at *6 (E.D. Va. 2015) (positing that a defendant's ability to combine "travel for litigation and other work-related trips" made transfer "marginally more convenient").

### iv.  Neaton Auto Products Manufacturing, Inc.

Neaton is an Ohio corporation with its principal place of business in Eaton, Ohio, where Neaton also maintains its primary manufacturing plant and its research and development facility.  (1390 Case Dkt. 38-1 ¶ 4.)  Neaton employees in Ohio "are

familiar with, and have oftentimes participated in, the development of the [airbag] technology and systems accused" in this case.  (*Id.*)  Neaton sells side-curtain airbags out of its Ohio facility and records related to those sales are in Ohio.  (*Id.*)  Neaton does not design, engineer, or manufacture any products, including side-curtain airbags, in California, nor does it employ anyone in California.  (*Id.* ¶ 5.)  Additionally, Neaton employees have traveled "many times" to Nissan North America Inc.'s facility in Farmington Hills, Michigan, to "interface with their Nissan counterparts regarding the design and manufacturing" of airbag systems, including those accused here.  (*Id.* ¶ 7.)  Neaton employees made trips to Michigan at least 18 times in 2015, and no trips to California in 2015 or beforehand.  (*Id.* ¶¶ 10–11.)  Neaton's contacts with Ohio and Michigan, and the likelihood of its employees' future travel to Michigan, combined with its lack of contacts with California, weigh in favor of transfer.

### v.  Takata Corp. and TK Holdings, Inc.

TK Holdings is a Delaware corporation with its principal place of business in Auburn Hills, Michigan.  (1389 Case Dkt. 70-4 ¶ 3.)  Takata Corporation is a Japanese company with its principal place of business in Tokyo, Japan.  (*Id.*)  Employees of the two companies (together, "Takata") who "may be most knowledgeable about the technical aspects of the Takata side curtain airbag products present in the accused vehicles would primarily be employed in either Takata's facilities in Michigan or outside the United States."  (*Id.* ¶ 4.)  The companies have only one office in California, with one employee who serves as a liaison between Takata's legal departments in the U.S. and Japan.  (*Id.* ¶¶ 7–8.)  TK Holdings alone employs more than 700 people in Michigan, including employees who are involved in sales, research, development, engineering, and testing of Takata airbags.  (*Id.* ¶ 6; *see also id.* n.1.)  These contacts, and the lack of significant Takata contacts with California, weigh in favor of transfer.

### vi.  Toyoda Gosei Entities

Toyoda Gosei Co., Ltd. is a Japanese company with a principal place of business in Japan.  (1389 Case Dkt. 70-6 ¶ 2.)  The company has done "the majority of the design and engineering of [its] side curtain airbags" in Japan, and an employee of a subsidiary avers that he is unaware of "any design or engineering of side curtain airbags by [Toyoda Gosei Co., Ltd.] in California."  (*Id.*  ¶ 3.)  Toyoda Gosei North America Corporation ("TGNA") is a Michigan corporation headquartered in Troy, Michigan.  (*Id.* ¶ 4.)  It manufactures side-curtain airbags in Missouri and Mexico, but its employees receive "technical leadership for safety systems, including side curtain airbags," from a joint venture based in Michigan.  (*Id.* ¶ 4.)  Sales of those airbags are based in Troy, Michigan, and records relating to those sales are in Michigan.  (*Id.*)  TGNA conducts no design or engineering of side-curtain airbags in California, and it maintains no facilities, personnel, or records related to such design or engineering in California.  (*Id.* ¶ 3.)  These contacts weigh in favor of transfer.

### vii.  Mobis Entities

Hyundai Mobis Co., Ltd. ("Mobis") is a Korean company with its headquarters in South Korea.  (1389 Case Dkt. 51 ¶ 9.)  Mobis Alabama LLC ("Mobis Alabama") is a Delaware corporation with offices in Alabama.  (*Id.* ¶ 10.)  Mobis Parts America LLC is a Delaware corporation with offices in Fountain Valley, California.  (*Id.* ¶ 11.)  Mobis supplies side-curtain airbag systems for Hyundai and Kia vehicles.  (1389 Case Dkt. 70-7 ¶ 4.)  It designs, tests, and manufactures those vehicles in a number of locations, including Korea and three Michigan facilities.  (*Id.*)  Mobis employees travel to eastern Michigan to work with engineers regarding the design and testing of Mobis's side-curtain airbags.  (*Id.* ¶ 5.)  Mobis conducts no design or testing of its side-curtain airbags in the Central District of California.  (*Id.* ¶ 6.)  Although Mobis Parts America LLC has clear

contacts with this District, the remaining Mobis Entity contacts are in Michigan and, therefore, the totality of all the Mobis Entities' contacts weigh in favor of transfer

### viii.  Hyundai

Hyundai Motor America ("HMA") is a California corporation with its principal place of business in Fountain Valley, California.  This fact notwithstanding, HMA evidently conducts all "engineering and in-house testing relevant to side-curtain airbag systems" at its Hyundai-Kia America Technical Center ("HATCI"), in Superior Township, Michigan, or at its facilities in Namyang, Korea.  (1389 Case Dkt. 70-2 ¶¶ 2–3.)  HATCI maintains facilities in California, but none of the research and testing work done at those facilities concerns side-curtain airbags.  (*Id.* ¶ 4.)  Additionally, "the bulk of the documents, records, physical evidence, witnesses, and other evidence" relevant to HMA's design and testing of side-curtain airbags is located in Michigan and Korea.  (*Id.* ¶ 7.)  These contacts, and HMA's limited California contacts that are relevant to the subject matter at hand, weigh in favor of transfer.

### ix.  Kia

Kia Motors America, Inc. ("KMA") is a California corporation with its principal place of business in Irvine, CA.  (1389 Case Dkt. 56 ¶ 5.)  KMA is a subsidiary of Kia Motors Corporation ("KMC"), a Korean corporation.  (*Id.* ¶¶ 4–5.)  Like Hyundai, any Kia work relating to side-curtain airbags occurs either in South Korea or at HATCI, in Michigan.  (1389 Case Dkt. 70-2 ¶¶ 2–4.)  As with Hyundai, these contacts favor transfer.

//

//

//

### x.  Nissan

Nissan North America, Inc. is a California corporation with a principal place of business in Franklin, Tennessee.  (1389 Case Dkt. 70-5 ¶ 6.)  It is a wholly owned subsidiary of Nissan Motor Co., Ltd., a foreign corporation organized under Japanese law and with its principal place of business in Japan.  (*Id.*)  Nissan does not manufacture side-curtain airbags, and instead purchases them from suppliers, including Defendants Autoliv, Nihon, Neaton, and Takata.  (*Id.* ¶ 5.)  Nissan engineers responsible for incorporating airbags into its vehicles are located either at its technical and engineering center in Farmington Hills, Michigan, or in Japan.  (*Id.* ¶ 7.)  No Nissan employee with knowledge of the products relevant to this action is in the Central District of California.  (*Id.* ¶ 9.)  As Nissan's relevant U.S. contacts are largely with Michigan rather than the Central District, its contacts weigh in favor of transfer.

### xi.  Toyota

Toyota Motor Sales, U.S.A., Inc. ("TMS") is a California corporation with a principal place of business in Torrance, California.  (1391 Case Dkt. 44 ¶ 3.)  Toyota Motor Corporation ("TMC") is a Japanese corporation with its principal place of business in Japan.  (*Id.* ¶ 2.)  TMS is a wholly owned subsidiary of TMC.  Although TMS is located in the Central District and possesses financial and marketing information in this District, the U.S. Toyota entity responsible for the design, development, evaluation, and testing of side-curtain airbag systems is Toyota Motor Engineering & Manufacturing, N.A., which is located in Saline, Michigan.  (1389 Case Dkt. 70-3 ¶¶ 1–8.)  The documentation produced by that work is also in Michigan.  (*Id.* ¶ 7.)  Toyota employees work with Autoliv employees in Utah and also conduct final manufacturing quality checks in Kentucky, but "no Toyota entity engages in the design, development, testing, or evaluation of side-curtain airbag systems at any location in the United States besides

[Toyota's] facilities in Saline, Michigan." (*Id.* ¶ 9.) (Toyota does do similar work in Japan.) Toyota's contacts with California, including marketing and sales information, are not to be discounted. But there is little question that Toyota's relevant *side-curtain airbag* information and employees are in Michigan. Toyota's contacts, therefore, weigh in favor of transfer.

It should be clear from the foregoing summary that many of the defendants in this action have significant ties to Michigan, and few have significant ties to California. Additionally, those who happen to have California ties—the Hyundai and Kia entities, for example—do not have any relevant *airbag system* contacts in this District. The accused activity in this lawsuit is not centered in California. And although AVS insists that the Vehicle Defendants' locations are paramount because the '093 Patent describes a particular airbag *in a vehicle*, this is a smokescreen: the key question in this case will be whether the Airbag Defendants provide the Vehicle Defendants with airbags that infringe the '093 Patent once they are placed in vehicles, not whether those airbags are actually present in the Vehicle Defendants' vehicles. (They obviously are.) Accordingly, the Court finds that the respective parties' contacts with the forum weigh significantly in favor of transfer.

### 5. The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

Here again, although some of the defendants have contacts within the Central District of California, those contacts broadly have little to do with whether the airbags designed and created by the Airbag Defendants actually infringe the '093 Patent when placed in the Vehicle Defendants' vehicles. Litigation in Michigan would be much more amenable to investigating the contacts that actually relate to AVS's patent infringement claim. This factor weighs in favor of transfer.

### 6.  The Differences in the Cost of Litigation in the Two Forums

Defendants argue that given the extent of their operations in Michigan, and the dearth of relevant operations in California, litigation is likely to be less expensive in Michigan.  The Court agrees.  The declarations provided by employees of Defendants describe a number of engineers and designers in Michigan whose testimony may be relevant to this action.  (*See*, *e.g.*, 1389 Case Dkt. 70-2 ¶ 5; 1389 Case Dkt. 70-5 ¶ 10.)  It also appears highly likely that relevant documentary evidence, including prototypes of the airbags at issue, would be simpler and less costly to retrieve from Michigan facilities than from California.  The Court therefore finds that this factor weighs in favor of transfer.

### 7.  The Availability of Compulsory Process

Defendants' briefing alleges that they intend to call a number of non-party witnesses "from the ranks of the automotive industry," and that those witnesses are likely to be in Michigan.  (1389 Case Dkt. 70-1 at 21.)  Although Defendants do not identify particular individuals, aside from the inventors of other patents that may have lived in Michigan in the past, it seems obvious that a patent infringement suit over airbag technology will inevitably involve calling non-party industry witnesses.  And the fact that many of the Airbag Defendants maintain facilities in Michigan lends credence to Defendants' assertion that comparable non-party witnesses will also be in Michigan.  Nonetheless, as AVS points out, Defendants' arguments regarding compulsory process are largely speculative.  *Cf. Signal IP*, 2015 WL 5766170, at *6 (finding that the compulsory process factor weighed slightly in favor of transfer where defendant, but not plaintiff, had identified particular non-party witnesses it planned to call).  The Court therefore finds that this factor is neutral.

### 8.  Ease of Access to Sources of Proof

Here again the parties diverge in their descriptions of the case.  As AVS tells it, this is a case about *vehicles*, and whether certain vehicles contain infringing airbags. Therefore, AVS says, the Vehicle Defendants are much more likely to have access to sources of proof, and some of the vehicle defendants—like Hyundai and Kia—are located in the Central District.  Defendants point out that this description of the case is at odds with AVS's amended complaints, which explain that the Vehicle Defendants are only in this case because of "the presence in [their] vehicles of side-curtain airbags within the scope of the claims of the '093 Patent."  (*See* 1389 Case Dkt. 10 ¶ 20.)  In other words, this is a case about *airbags*, and it is the Airbag Defendants—who have significantly stronger ties to Michigan than to California—that are likely to be in possession of relevant evidence.  The Court agrees with Defendants.  Declarations from employees of numerous defendants explain that relevant technical, design, development, marketing, sales and financial documents relating to the accused airbags are in or near Michigan.  (*See* 1389 Case Dkt. 70-8 ¶ 17; 1389 Case Dkt. 49 ¶ 5; 1389 Case Dkt. 70-4 ¶ 4; 1389 Case Dkt. 70-6 ¶¶ 3–4.)  No comparably important evidence appears to exist in California.  Accordingly, this factor weighs in favor of transfer.

### 9.  Public Policy of the Forum State

Defendants argue that the Eastern District of Michigan has a compelling local interest in adjudicating these cases because it is the epicenter of the U.S. automotive industry.  Some courts have so found.  *In re Toyota Motor Corp.*, 747 F.3d at 1340 (describing as "amply supported" the district court's determination that the Eastern District of Michigan had a local interest in automotive patent litigation).  Here, however, although relevant activities do predominantly occur in Michigan, Defendants also have important activities abroad.  And some of the Vehicle Defendants are located in

California.  The Court is unwilling to say that just because a case involves the automotive industry, the Eastern District of Michigan automatically has a compelling local interest in adjudicating it.  As a result, the Court finds that this factor is neutral.

### 10.  Judicial Economy and Court Congestion

The parties also considered the impact of judicial economy and relative court congestion.  Defendants point out that AVS has litigated numerous patent cases in the Eastern District of Michigan, and that AVS's predecessor—a company called ATI— litigated at least one patent from the same family as the '093 Patent in Michigan.  (*See* 1389 Case Dkt. 70-1 at 24–25.)  AVS counters that patent cases in the Central District go to trial approximately one year faster than patent cases in the Eastern District.  (*See* 1389 Case Dkt. 89-14.)  Neither argument clearly has the better of the other, and this factor is neutral.  *Cf. In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (describing the court congestion factor as "speculative" and noting that "case-disposition statistics may not always tell the whole story").

### 11.  Conclusion

Having considered each of the *Jones* factors, the Court finds that although most of the factors weigh neither for nor against transfer, the parties' respective contacts with the forum, the contacts relating to the plaintiff's causes of action, and the ease of access to sources of proof weigh firmly in favor of transfer to the Eastern District of Michigan.  At bottom, this case has little to do with the Central District beyond the fact that a couple of the Vehicle Defendants—who are only in this case because infringing airbag systems are allegedly installed in their cars—happen to maintain their corporate headquarters here.  A decidedly larger proportion of the research, design, and manufacturing of the airbag

systems relevant to this case occurs in Michigan, and litigation there will clearly be more convenient for the parties and witnesses and serve the interests of justice.

## C.  Case-by-Case Analysis

As explained *supra*, AVS objects to treating these four cases as one for the purpose of a transfer motion.  However, evaluating the cases on a case-by-case basis does not change the outcome.  First, Airbag Defendants with significant ties to Michigan appear in every case.  *See supra* at 3–5; 10–14.  Second, as Defendants point out, even if the cases are taken one-by-one, defendants in one case are likely to call as non-party witnesses defendants in the other cases.  (*See* 1389 Case Dkt. 91 at 2–3 (explaining that in the 1389 case alone, employees of TK Holdings (in Auburn Hills, Michigan), Toyoda Gosei North America (in Troy, Michigan), Neaton (in Eaton, Ohio), Nissan Technical Center (in Farmington Hills, Michigan), and Toyota Motor Engineering & Manufacturing N.A. (in Saline, Michigan)—none of whom are defendants in the 1389 case—would become "important non-party witnesses").)  Third, the fact remains that AVS lacks significant contacts with California, rebutting a presumption its choice of forum may have merited.  And individual Defendants' contacts with California broadly have little to do with airbag systems.  Therefore, even in the cases with California-based Vehicle Defendants, the relevant connections to California do not stand for much in the transfer analysis.  Finally, some of the cases clearly merit transfer—the 1391 case, for example, where no party has any significant tie to California—and it would make little sense to transfer some but not others just because the transfer analysis might be a closer call in one of the four cases.  The Court therefore concludes that even on a case-by-case analysis, the convenience of the parties and witnesses and the interests of justice are served in all four cases by transfer to the Eastern District of Michigan.

//

1

2

## V.  CONCLUSION

3

4       For the foregoing reasons, Defendants' motions to transfer this case to the Eastern

District of Michigan are GRANTED.  Five pending motions remain.  Nihon filed

5   motions to dismiss for lack of personal jurisdiction in both the 1390 Case and the 1392

6   Case.  (1390 Case Dkt. 40; 1392 Case Dkt. 45.)  Neaton did likewise.  (1390 Case Dkt.

7   38; 1392 Case Dkt. 49.)  Key Safety Systems also filed a motion to dismiss for lack of

8   personal jurisdiction, in the 1389 Case.  (1389 Case Dkt. 47.)  Due the Court's granting

9   of the transfer motions, those other five pending motions are DENIED WITHOUT

10  PREJUDICE.

11

12

13

14

15       DATED:      April 27, 2016

16                                                        _____

17                                                             CORMAC J. CARNEY

18                                                        UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28